YOUNG *v.* COWDEN.

*(Jackson.*    April 17,  1897.)

1. VERDICT.   *Not aside, when.*

A verdict will not be set aside by this Court upon consideration
of the facts, if there is any material reliable evidence to sup-
port it.   It will not be set aside upon the ground that the
weight or preponderance of the evidence is against it.   (*Post,
p. 581.*)

Cases cited and approved: Kirkpatrick *v.* Jenkins, 96 Tenn., 85;
Minton *v.* Stahlman, 96 Tenn., 111.

2. CHARGE OF COURT.   *As to sympathy in personal injury case.*

An instruction in an action for personal injuries, to the effect
that the sympathy is very properly aroused in behalf of the
person injured, but that the Court and jury must bear in mind
that the questions for determination are how the accident oc-
curred, which party is to blame, and the extent of the injury,
though subject to criticism for meagerness and as not being
sufficiently guarded, will not be deemed reversibly erroneous
where no further charge upon the point was asked.   (*Post,
pp. 581, 582.*)

3. PUBLIC ROADS.   *Duty of drivers on.*

A driver upon a public road should have his horse and vehicle
under such usual, ordinary, and reasonable control as to be
able to prevent a collision.   (*Post, p. 585.*)

Case cited: 13 Am. Rep., 135.

4. SAME.   *Liability for injuries caused by collision of vehicles in pass-
ing each other.*

A driver cannot avoid liability for injuries by collision to one
riding in a preceding vehicle going in the same direction be-
cause the latter violated the statute requiring that when ve-
hicles are traveling in the same direction, the one in the rear
may pass by going to the left, and that no driver shall stop
his vehicle without turning so far to the right as to leave half
of the road free, open, and unobstructed for other travelers and

14 P—37

vehicles, where, after noticing that the preceding vehicle had turned to the left, he might have avoided a collision by turning to the right. (*Post, pp. 583–585.*)

Code construed: §§ 1601, 1603, 1605 (S.); §§ 1310, 1312, 1314 (M. & V.); §§ 1173, 1175, 1177 (T. & S.).

Case cited: 73 Am. Dec., 407.

5. SAME. *Duty of driver of hindmost vehicle.*

It is the duty of a driver of the hindmost of two vehicles proceeding in the same direction, who desires to pass the other vehicle which is occupying the portion of the roadway to which he is entitled, to stop and give warning to the driver of that vehicle, so as to avoid a collision, and not to attempt to pass unless he can do so safely. (*Post, p. 586.*)

6. SAME. *Rights of driver in leaving road.*

The driver of the preceding of two vehicles going in the same direction is not guilty of negligence in occupying that side of the public road to which the hindmost driver is ordinarily entitled, when it is necessary for him to do so, in entering his premises, and he remains thereon only a reasonable time. (*Post, pp. 583–585, 587.*)

7. SAME. *What care is required of driver as to horse and vehicle.*

A driver upon a public highway is required to exercise ordinary care in the selection and use of horse and vehicle. He is not required to have horse and vehicle absolutely free from defects or vices, but only to exercise reasonable care in this respect. (*Post, p. 587.*)

8. EVIDENCE. *Not objectionable as calling for opinion, when.*

A question as to whether a vehicle could pass between the middle of the avenue and the fence on one side is not objectionable, as calling for mere opinion, where the witness has already stated that there was an open space of some twenty feet between those points. (*Post, pp. 587, 588.*)

9. REMITTITUR. *Of part of verdict for damages.*

The trial Judge may, as a condition of denying the motion for a new trial made by defendant in an action for tort, require a remittitur of a part of a verdict, which he deems excessive; but it is optional with the plaintiff to comply with such condition or to suffer a new trial. (*Post, pp. 588–590.*)

Young *v.* Cowden.

Cases cited: Branch *v.* Bass, 5 Sneed, 366; Railroad *v.* Jones, 9 Heis., 27; Massadillo *v.* Railroad, 89 Tenn., 661; Railroad *v.* Wallace, 91 Tenn., 35; Railroad *v.* Garrett, 8 Lea, 450; Railroad *v.* Foster, 10 Lea, 366.

FROM SHELBY.

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

L. & E. LEHMAN for Young.

PERCY & WATKINS for Cowden.

WILKES, J. This is an action for personal injuries. It was tried before the Court and jury, and a verdict was rendered for $2,000. Upon suggestion of the Court, a remittitur of $1,000 was entered by plaintiff, and judgment was entered for $1,000, and the defendant appealed and assigned errors.

It appears that defendant, with her sister, Mrs. Vaccaro, and her brother-in-law, A. B. Vaccaro, were driving, one evening, along Kerr Avenue, in the city of Memphis. The two ladies were sitting on the back seat of the rockaway, while Mr. Vaccaro was seated in front and driving. Kerr Avenue runs east and west. Mr. Vaccaro lived on the south side of the avenue. When he came to a point opposite the gate leading into his premises, he stopped his vehi-

cle on the left side of the street, to wait until the gate could be opened, so that he might drive in. In doing so, he turned his horse's head towards the gate, so that the rockaway extended out to the center of the street, on the left side, the horse and vehicle thus occupying the left-hand half of the roadway or avenue. The street at this point is about forty-two feet wide. The curtains, side and back, of the vehicle were down.

While thus standing in the roadway of the street waiting for the gate to be opened, the defendant, who had been driving along the avenue for some distance in a buggy behind the rockaway, and going in the same direction, drove his buggy into the rear end of the rockaway, crushing the right hind wheel of the vehicle, overturning it, and throwing the occupants out. The plaintiff was a lady some seventy-four years of age, and, in the fall and crushing of the vehicle, she had her right arm broken above the elbow, so that the bones protruded through the flesh, and she was otherwise bruised and injured. There was space sufficient for the defendant to have passed the standing vehicle on the right-hand side, and the avenue was not crowded with vehicles. There was a small ditch, about five or six inches deep, on the right side, but it was not deep enough to prevent an easy passage. Defendant, in his testimony, claimed that the vehicle in front stopped rather suddenly and unexpectedly at the gate, and that his horse plunged to the left, and that the accident was

unavoidable. In this he is not supported except by his wife. It appears that the horse driven by defendant did get a little alarmed, but it was only after the collision and in consequence of it. The occupants of the rockaway, in front did not know that defendant was driving in their rear, and did not see the manner in which the accident occurred until after the collision, and had no knowledge that he desired to pass.

Quite a number of errors are assigned. The first is, that the verdict of the jury is against the great weight and preponderance of the testimony. This assignment is not good. The question after verdict by a jury is not as to the weight or preponderance of the testimony, but is there any material reliable testimony to support the verdict? If so this Court will not disturb the finding of the jury. Besides, in this case there is material evidence to support the verdict. *Kirkpatrick* v. *Jenkins*, 12 Pickle, 85; *Milton* v. *Stahlman*, 12 Pickle, 111.

No question has been raised as to whether plaintiff is chargeable with the negligence of the driver of the vehicle, if he was guilty of negligence, nor whether she, as a mere passenger in the vehicle, can be said to be negligent in not conforming to the law of the road, and we therefore express no opinion upon this point.

It is next assigned as error that the Court said to the jury: "In cases where persons are injured, we naturally have our sympathies aroused in behalf

of their sufferings and crippled condition, and that, too, very properly. While this is commendable, we must never lose sight of the fact that we are engaged in this trial for the sole purpose of determining: (1) How did this accident occur? (2) Which, if either of the parties, is to blame? , (3) What is the extent of the injury?'' It is argued that this was virtually an instruction to the jury that they were to give effect to their sympathy on account of the plaintiff's injury, suffering, and crippled condition, as well as the other matters stated by him, and that he should have said to them, in addition, not to allow their sympathies to enter into the consideration of the case. We think the expression used by the trial Judge is subject to criticism as given, for its meagerness, and could have been improved by using the additional caution now suggested, but no further charge upon the point was asked at the trial and the jury were told that their sole duty was to determine the legal features in the case.

It is again assigned as error that in considering the question of negligence under the charge the jury might look to the speed at which defendant was driving, the nearness of the horse and vehicle to the one plaintiff was in, and to the disposition of the animal he was driving. The objection is, that these propositions were put in the alternative, and that the matter of negligence was made to turn, to some extent, upon the defendant's knowledge of his horse or acquaintance with his habits and disposition while being

driven. The charge upon the point was quite full, and we are unable to see any error in it. The Court said: "In this case, under the issues presented, ordinary care is such as is usually exercised in like circumstances by the majority of the community who engage in a like business. If the jury find that defendant, at the time of the collision, was as careful as people generally are under the circumstances and conditions in which the parties were then situated, then the defendant was not guilty of negligence, and did use ordinary care, and he is not liable." He further charged the jury that a horse, though reasonably safe, may prove unmanageable in some cases, and this should not be taken to indicate negligence on the part of defendant. He told the jury that the question in the case was whether the defendant, Young, was exercising the care which an ordinary careful driver would have exercised under those circumstances. He further said: "When the evidence satisfies you that the horse suddenly and unexpectedly did that which the driver had no right to expect him to do, and you find this action of the horse was the cause of the collision, then no recovery can be had."

The fourth assignment of error raises the question whether a vehicle, in front of another upon a public highway or street, may, under any circumstances, turn to the left, and occupy that portion of the street or road, and yet be free from negligence. Reference is made to sections of the Code

(Shannon, §§ 1601, 1603, 1605), which provide that when vehicles are traveling in the same direction the one in the rear may pass by, going to the left; and no driver shall stop his vehicle on any macadamized or turnpike road for any cause or any pretense whatever, without turning so far to the right as to leave half the road free, open, and unobstructed for other travelers and vehicles, and § 1605 provides a penalty for violating these provisions. These provisions lay down a general rule for the guidance of vehicles upon public thoroughfares, and are to receive a reasonable construction, and when so construed they are in harmony, generally, with the law of the road, as laid down in the text-books and decisions of the several States. The provisions, in substance, are, that when vehicles meet each other it is the duty of each to turn to the right. When a party attempts to pass another in the highway from behind, it is the duty of the foremost party, if he is notified of the approach of the other, to turn to the right, and it is the duty of the party behind to turn to the left. In this case Mr. Vaccaro's gate was on the left-hand side of the avenue. It was an impossibility to get into his premises otherwise than by going through this gate. He did not know anybody was behind him. No warning was given by defendant of his approach or intention to pass. Now, if defendant's contention is correct, and the statute must be literally construed and strictly enforced, it means that a party innocently

occupying the left-hand side of the road for a legitimate purpose, may be run into and injured by a party behind him, although there is sufficient space on the right side of the road for the hindmost party to pass. Even if plaintiff was violating the law contended for, this was no excuse for the defendant to drive into the rockaway and turn it over and injure the plaintiff. *O'Malley* v. *Dorn*, 73 Am. Dec., 405, and note. It is well recognized in the law of the road that a driver may occupy any part of the road which will not obstruct or interfere with the rights of others driving on the highway. 12 Am. & Eng. Enc. L., 957–961, note 4; *O'Malley* v. *Dorn*, 73 Am. Dec., 407, note.

The Court said that when the movement of the vehicle in front indicated the intention of the driver to use another part of the road which he was not then using, the driver of the vehicle in the rear must govern his vehicle accordingly; that the driver should have his horse and vehicle under such usual, ordinary, and reasonable control as to be able to stop and prevent a collision. This was a correct and proper instruction. *Avegno* v. *Hart*, 13 Am. Rep., 135, note.

It is assigned as error that the Court charged the jury that if the plaintiff drove his buggy so close to the rockaway, in endeavoring to pass it, that it would have been considered a negligent manner of driving by ordinarily prudent drivers, under the circumstances of this case, they might consider

that in determining whether or not the defendant was negligent, just as they might consider the nearness with which the defendant was driving behind the rockaway. It is said that this was error because the Court did not add that the defendant was not bound to drive on to any part of the roadway which did not appear safe, though, as a matter of fact, it might have been safe to drive on. We think there is no error in this charge. If defendant desired additional instructions they should have been requested.

In addition, we are of opinion that when the roadway to which the hindmost vehicle is by law entitled, is already occupied by another vehicle, and it is dangerous to pass by on the other side, it is the duty of the vehicle desiring to pass to stop and give warning to the one in front, so as to avoid any collision, before attempting to pass, and then not to attempt to pass unless he can do so safely. In this case it was not negligence for the foremost vehicle to go upon the left-hand side of the street, the occupants having no knowledge of the vehicle following them. Indeed, it was necessary to do so in order to enter the premises of the owner, and in such cases he is entitled to the use of the left side of the street in a reasonable way and for a reasonable time to enable him to enter the gate; and the defendant should not have passed so closely behind him or driven at such rapid rate as to make a collision probable. In this case the hindmost

Young *v.* Cowden.

vehicle did not attempt to pass to the left, as the statute provides, but on the other or right side of the vehicle in front.

A special request was made that the Court charge that if the plaintiff occupied the left-hand side of the street it was unlawful, and negligence would be presumed and plaintiff could not recover. This has already been virtually disposed of. The proof shows that plaintiff was upon the left side of the road for a lawful purpose, and no presumption of negligence can arise under the facts of the case.

Another special request was that all that was required of defendant, so far as his horse was concerned, was that he should be reasonably safe and gentle, and that it was not negligence to drive a horse which had on rare occasions previously shied. The trial Judge told the jury that it was not required of a driver to have a carriage or horse absolutely sound and free from defects, but only to exercise ordinary care in these respects, and if a horse had shied once or twice in a number of years this might not indicate negligence at all. This, we think, is sufficient upon this point.

Mr. Vaccaro was asked whether a vehicle could pass between the middle of the avenue and the north fence. This was objected to as the expression of an opinion, and objection overruled. He had already stated that there was a space of twenty feet left open on the right side of the street, and the ques-

tion and answer was nothing more than stating that there was room for the passage of the vehicle.

It is assigned as error that the trial Judge could not require a remittitur of a part of the verdict, but should have set it aside *in toto*. It is conceded the practice of the Courts of Tennessee has been to allow remittiturs in the trial Courts as a condition of not granting a new trial, but it is insisted it is an incorrect practice, and contrary to the great weight of modern authorities. None, however, are cited in the brief. The trial Court held that none of the grounds for new trial were well taken, except the one that the verdict was excessive, and suggested that if $1,000, or one-half the amount, was remitted the Court would overrule the motion and enter judgment for $1,000. Defendants excepted to this ruling. Plaintiff elected to remit, and the motion for new trial was then overruled, to which defendant excepted.

The rule, as established in this State, is laid down in the leading case of *Branch* v. *Bass*, 5 Sneed, 366, as follows: "When, in an action of tort, the jury gives damages which the Court thinks excessive, the Court has the discretion to set aside the verdict, and award a new trial; or it may suggest to the plaintiff, as an alternative thereof, to release the damages to an amount which, in the judgment of the Court, would be reasonable and just, and, upon such release being made, the Court may render a judgment for the balance. Such action on the part

of the Court is no invasion of the province of the jury; nor can the defendant complain of it if the judgment be not still excessive and the verdict against him be warranted by the proof, and such practice is not an invasion of the province of the jury in assessing damages.'' The rule has been approved in the case of *Railroad Co.* v. *Jones,* 9 Heis., 27, and other cases, and followed generally in the trial Courts for a number of years.

In *Massadillo* v. *Railroad Co.,* 5 Pick., 661, it was held that a remittitur under protest of the plaintiff would not be received by the trial Court, and would be rejected, if entered, in the consideration of the motion for new trial in this Court, the proper practice in such case being to grant new trial.

In the case of *Railroad Co.* v. *Wallace,* 7 Pick., 35, it was held that interest upon damages was not proper, but if the amount found is excessive this Court would not reverse the judgment if the plaintiff would remit the interest. This was, however, a case peculiar in its facts. The defendant cannot be required to abide the judgment and forego an appeal. *Railroad* v. *Garrett,* 8 Lea, 450; *Railroad* v. *Foster,* 10 Lea, 366.

We see no valid objection to the rule as laid down and followed in this State, and in almost all the States of the Union, of suggesting a remittitur as a condition of not granting a new trial, and while it cannot be made peremptory upon the plaintiff, but must remain optional, still, when it is

accepted by plaintiff, and there is no attempt to prevent an appeal on the part of the defendant, and thus to coerce him to submit to the judgment, he has no right to complain, inasmuch as the Court fixes the damages at an amount lower than that fixed by the jury.

The judgment is affirmed, with costs.