―――――O―――――

## No. 6278.

### E. M. HART, ET AL, vs JOHN BONURA & CO.

#### Syllabus.

1. The driver of a vehicle, before turning or stopping in changing his course, must make sure that such movement can be made in safety.

2. The operator of an automobile, on approaching from behind a vehicle going in the same direction and intending to pass it, should sound his horn to warn the driver ahead of such intention.

3. Where both parties are at fault neither can recover.

Appeal from the Civil District Court for the Parish of Orleans, Division "E," No. 100,834. Honorable G. H. Theard, Judge.

Charles Rosen, for plaintiff and appellant.

Wm. L. Hughes, for defendant and appellee.

His Honor, JOHN ST. PAUL, rendered the opinion and decree of the 'Court, as follows:

This is a suit for damages to an automobile received in a collision with a wagon. As there is an apparent conflict in the evidence we think the occurrence might best

― 171 ―

be related by extracts taken from the testimony of the only eye witnesses.

Mr. William V. Seeber, a passenger in the automobile, testified as follows:

(Part 1, p. 2):

"We were coming up in the automobile on the wood side of Claiborne Avenue, and just before reaching Kerlerec Street, I noticed the wagon on the right of us; and Mr. Ruhl the driver (chauffeur) was about to pass the wagon at the intersection of Claiborne and Kerlerec Streets, when the horse was pulled suddenly to the left and ran into us, and in trying to dodge the wagon the automobile struck a post."

- (P. 3):

"Did he do anything to show that he was going to turn across your path?

Absolutely nothing * * *

(P. 3):

There was nothing to obstruct the view of the driver when he wanted to turn?

No, sir, nothing to obstruct the view at all. * * *

(P. 5):

You know the driving rules, the street rules?

Yes, sir; I know when a man will turn a corner he should put his hand out. We would not have had the accident had he done so.

(P. 6):

Now how far from the corner of Kerlerec * * * were you when you first saw the wagon?

* * * We were about the middle of the block.

And the wagon was hugging the curb at the time, on the Lake side?

Yes, sir. We were in the center of the street.

— 172 —

(P. 14):

* * * I don't think there was any horn blown, and there was no need of any.

I tell you I didn't hear any horn blown. The speed was very moderate. I don't think we were going more than ten or twelve miles an hour.

(P. 17):

Nothing would change your views that he (the driver of the wagon) is absolutely responsible for the whole thing?

He is, absolutely. If he had carried out the custom of drivers when they go to turn the corner; had he given a signal or turned around, it would not have happened; * * * Had he looked in the rear he would have seen us coming * * *

Mr. Joseph L. Ruhl, the chauffeur, testified as follows:

(Part 2, p. . .):

How far were you from the corner of Kerlerec and Claiborne when you first saw the wagon? Did you see it at all before getting there?

Yes, sir; saw it quite a good deal down the street, * * * I think it was at least three quarters of a block, * * * one-half to three-quarters, I would say.

(Part 2, p. 4):

How far was the wagon from the corner then?
I cannot answer that.

At what point in the road were you traveling when you first saw the wagon, with regard to the curb?

I was traveling about the center of the road or a little to the right of the center.

(Part 3, p. 8):

Now I ask you whether or not before you reached that corner you blew your horn?

Further down the road I did, because other vehicles were coming in the opposite direction, and I had

— 173 —

blown my horn for the vehicles coming in the opposite direction.

Did you blow your horn for the corner?

No, sir.

Did you make any other signal?

No, sir. * * * It is not customary, no ordinance requires a signal on passing a vehicle.

Arthur Rouseve, the colored driver of defendant's wagon, testified as follows:

(Part 8, p. 17):

I had been to dump a load of trash, back out St. Roch, and on my way up I was driving up Claiborne Street. I wanted to turn out Kerlerec * * * and I turned the corner; I didn't see anything.

(P. 18):

At what rate were you going?

Ordinary trot.

(P. 18):

Tell us what occurred?

As I turned I looked before I turned the corner; looked at the back of me, to the back, just before reaching the corner.

Was your wagon a covered one?

Top wagon, yes, sir.

Open on the sides?

It was open, all the curtains were up, I could see. I looked back, didn't see anything, started to turn the corner when I was suddenly struck by an automobile.

(P. 19):

How far were you from the corner when you looked?

About fifty feet; I looked, in the back of me towards Columbus Street.

(P. 19):

> Before that automobile struck you, did you hear any sound of any kind showing the automobile was coming?
> No, sir, nothing.

From the foregoing extracts it will be seen that the supposed conflict in the testimony is more apparent than real; and from the testimony of three witnesses, of which the foregoing contains the main features, we find that the facts of this case were substantially as follows:

Defendant's driver was coming up 'Claiborne Street, driving near the curb on the right. Arrived at about fifty feet from the corner of Kerleree Street, and intending to turn out that street, he looked behind but did not see the automobile which was then some distance behind him. But when he actually reached the corner and started to turn across the road he did not look again, nor did he signal with his right hand as required by the City ordinance.

Meanwhile, plaintiff's chauffeur, moving swiftly and silently, had overtaken and was about to pass the wagon, without having given any warning whatever of his approach.

Naturally a collision resulted.

The failure of the driver to put out his hand at the moment of turning had nothing in the world to do with this collision, for the suddenness with which it occurred shows that at that time the automobile had already passed from behind him and was then on his left where a hand extended on the right side of the wagon could not have been seen.

But this accident was, beyond the shadow of a doubt, due to the joint negligence of both parties.

— 175 —

Had defendant's driver looked when he should have looked, that is to say, not when he was fifty feet from the corner, but at the moment he started to turn, he would have seen the automobile then nearly alongside of him.

Had the plaintiff's chauffeur, overtaking a slow and noisy vehicle by a swift and silent one, taken the least precaution to warn the driver in front of him of his approach and intention to pass, there is not the slightest doubt that the latter would have heeded the warning, and not attempted to cross the path of the oncoming automobile.

As to the duty of defendant's driver, that was fixed by the terms of the city ordinance heretofore referred to (No. 6574 New Council Series, Section 1, Paragraph F) reading: "Drivers of vehicles before turning, stopping or changing their course, shall make sure that such movement can be made in safety, etc."

As to the duty of plaintiff's chauffeur, City Ordinance No. 2174, New Council Series, Section 3, reads as follows: "Each and every automobile * * * shall be equipped and supplied with an automobile horn * * * and the same shall be sounded at street crossings, and whenever else deemed advisable by the operator of such vehicle, for the purpose of notifying pedestrians or others of the approach of any such vehicle. * * *"

Taking this in connection with the rule laid down in **Avegno vs. Hart, 23 La An.., 235,** that "when a driver attempts to pass another in a public road, he does so at his peril," it is clear that the rule in this city can not be different from that laid down in **Young vs. Cowden, 98 Tenn., 577, 40 S. W. Rep., 1088-1091,** that "It is the duty of the driver of a vehicle to give warning to the one driving a vehicle in front before attempting to pass ahead;"

the equity and common sense of which appeals to us as a good rule for all places and all occasions.

We think that both parties were at fault and neither can recover.

Judgment affirmed.

Opinion and decree, February 17th, 1915.

Rehearing refused, March 15th, 1915.