## GEORGE COLLINS v. A. J. DESMOND, et al,

### Middle Section. July 3, 1925.

#### No petition for Certiorari was filed.

1. **Appeal and error. Weight of evidence is for jury.**
   In an action to recover for damages on account of injuries to his wagon and to his person, which injuries were alleged to be caused by defendant's negligence in driving an automobile, held the weight of the evidence is for jury to determine.

2. **Negligence. Proximate cause of accident.**
   In an action to recover for damages on account of injuries to his wagon and to his person which injuries were alleged to be caused by defendant's negligence in driving an automobile, held whether under the facts of the case the negligence of the defendant was the proximate cause of collision is a question for the jury to determine.

3. **Negligence. Contributory negligence. Jury question.**
   The question of contributory negligence, as well as the question of negligence, is ordinarily for the jury. Even though the facts be undisputed as to whether, under circumstances conceded, the conduct of a plaintiff was that of an ordinarily prudent man, the matter should be left to the jury. The court should draw no inference when in doubt, but only in those cases where the evidence is without material conflict, and such that all reasonable men must reach the same conclusion therefrom. It is only in cases where the evidence is susceptible of no other fair inference that the court is justified in instructing the jury, as a matter of law, that the plaintiff has been guilty of contributory negligence which would bar his recovery.

4. **Negligence per se. Not negligence per se to drive across country highway where there is no knowledge of car or anyone following.**
   In an action to recover damages for personal injuries to plaintiff caused from collision with defendant's automobile, held it was not negligence per se for the plaintiff to drive his horse and wagon across the highway, the occupants of the wagon having no knowledge of the automobile following them.

5. **Negligence. Evidence. Evidence held not to show contributory negligence.**
   In an action to recover damages for personal injuries caused by a collision of defendant's automobile with plaintiff's wagon, held that there was no duty on the plaintiff to look and ascertain whether anyone was behind him before he turned across a country road. The same degree of care is not required on country roads as is required on city streets.

Appeal in Error from Circuit Court of Franklin County. Hon. Jno. T. Raulston, Judge.

Affirmed.

Jesse B. Templeton, of Winchester, for Desmond and Logan.

J. Roy Hickerson, of Winchester, and W. L. Myers, of Sewanee, for Collins.

FAW, P. J.    According to the usual practice, this case should be styled A. J. Desmond, et al., v. George Collins, as A. J. Desmond and James Logan are the plaintiffs in error, but, to avoid possible confusion, we have styled the case in the caption of this opinion as it is entered on the docket of this court.

Collins was the plaintiff, and Desmond and Logan were the defendants, in the trial court, and we shall so designate the parties in this opinion.

Plaintiff sued the defendants, before a Justice of the Peace of Franklin county, for damages on account of injuries to his wagon and to his person, which injuries, he alleged, was caused by defendants negligently and unlawfully driving a certain described Nash automobile against plaintiff's wagon at a named point on a public highway in Franklin county, Tennessee.

The defendants were brought before the court by personal service of the warrant, and an attachment was issued and levied on the aforesaid Nash automobile.

The defendants filed a plea in the J. P. court, self-styled a "plea in abatement," in which they averred that "they nor either of them are guilty of the matters alleged in said summons and attachment; that they nor neither of them are guilty of fast or reckless driving an automobile and are not liable to plaintiff for any damage he may have sustained."

Both parties appealed from the judgment of the Justice of the Peace to the circuit court of Franklin county, where the case was tried before Judge Raulston and a jury, and the jury found the issues in favor of the plaintiff and assessed his damages at $100,00. A motion on behalf of defendants for a new trial was overruled and judgment entered in favor of plaintiff and against defendants for $100.00 and all the costs of the cause; whereupon defendants prayed an appeal to this court, which was granted by the trial court and perfected by the defendants.

At the close of the plaintiff's proof, on the trial below, the defendants moved the court for peremptory instructions to the jury to return a verdict in their favor, and this motion was renewed at the close of all the evidence.

Through their first assignment of error, the defendants complain of the action of the trial court in overruling each and both of said motions for peremptory instructions.

The defendants cannot be heard to assert that the court erred in overruling the motion for a directed verdict made at the close of the plaintiff's proof, because they did not elect to stand upon their motion made at that time, but proceeded to put on witnesses in their own behalf, and thereby waived their right to rely on said first motion for peremptory instructions. John Gerber Co. v. Smith, 150 Tenn. 255, 259;. La Follette Coal & Iron Co. v. Bennett, 8 Higgins, 210.

However, through their first assignment, the defendants also assign error upon the overrulement of their motion for a directed verdict made at the close of all the evidence, and to this extent the first assignment of error presents a question for the consideration of this court.

The second assignment of error makes the question that there was no evidence produced on the trial to support the verdict of the jury, and, as there are no other assignments of error, it thus appears that the questions to be determined by this court are (1) whether the evidence was sufficient to require the submission of the case to the jury, and (2) whether there is any evidence to support the verdict of the jury.

These questions require a consideration of the evidence from substantially the same viewpoint; that is to say, if there was sufficient evidence to justify the trial court in submitting the case to the jury despite the defendants' motion for peremptory instructions, there was necessarily some evidence to support the verdict. Sou. Rwy. Co. v. Lewis & Adcock Co., 139 Tenn. 37, 44; F. W. Woolworth Co. v. Connors, 142 Tenn. 678, 688.

In order to dispose of the assignments of error it is necessary to examine the proof in the case, but it is not our duty or privilege to ascertain the comparative weight of the evidence offered on behalf of the respective parties. The verdict of the jury has settled all conflicts of evidence in favor of the plaintiff below, and, under well-settled rules, it is our duty, as an appellate court, to consider the evidence in that aspect most favorable to the plaintiff of which it is reasonably susceptible. We must, therefore, accept as true the testimony most favorable to plaintiff, and give plaintiff the benefit of all inferences favorable to him which may be reasonably drawn from such evidence.

In view of the rules just stated, it is obvious that a detailed statement of the testimony of all the witnesses is not necessary to the purposes of this opinion.

The proof shows, without dispute, that a "Nash six touring" automobile, occupied by the defendants and their respective wives, and driven by defendant Desmond, collided with a "light wagon,"

owned by plaintiff Collins, and damaged the wagon to the extent of, at least, $37.50.

The wagon was drawn by one horse and was not loaded. Plaintiff and a companion, Otto Mitchell, were seated on a spring seat in the wagon, and plaintiff was driving. The collision occurred on the Dixie Highway, between the towns of Sewanee and Cowan, in Franklin county, Tennessee, about 9:30 o'clock in the morning of March 13, 1923. The impact of the car with the wagon threw plaintiff from the wagon against the hood or fender of the car, from which he. rolled to the ground. Mitchell was also thrown from the wagon at the same time, and was suspended in front of the car by a sweater worn by him, which caught on the motor-meter of the car. He was released when the car stopped, and was uninjured.

Defendants contended on the trial below that plaintiff suffered no personal injuries as a result of the collision, but plaintiff testified at the trial in the circuit court, on September 10, 1924, that he "was bruised and injured in the back and was otherwise bruised; that he suffered a great deal from said injuries and had not gotten over it yet; that after the accident he was carried back to his home at Sewanee by Mr. J. G. Hawkins where he went to bed for awhile but later got up and went to a store near his home; that on the next day after the accident, he went out to a hospital at Sewanee and had some X-ray pictures made and then returned to his home; that he went by himself to the hospital; . . . that he did not know what his doctor bill was but that his hospital bill was $21.00 but that he had paid nothing on either; that Dr. R. M. Kirby-Smith was his physician and that Dr. A. L. Lear made the X-ray pictures."

It is obvious that there is evidence that plaintiff was injured in his person as a result of the collision, and, as there is no assignment that verdict is excessive, there is no occasion to consider further the amount of the damage inflicted upon the property and person of plaintiff by the alleged negligent act of defendants.

The questions for determination are (1) whether there is any evidence from which the jury could have found that defendants were guilty of actionable negligence which proximately caused plaintiff's injuries, and if so, then (2) whether there is in the record undisputed evidence upon which it should be held, as a matter of law, that plaintiff was guilty of negligence which combined and concurred with the negligence of the defendants as the proximate cause of the collision and the resulting injuries to the plaintiff.

As a matter of course, if defendants were not guilty of negligence which was an efficient cause of the collision, plaintiff cannot recover; and if plaintiff and defendants were both guilty of negligent acts which together constituted the proximate cause of the injury, plaintiff cannot recover. Grigsby v. Bratton, 128 Tenn. 598.

Defendants were en route from the State of Florida to the City of St. Louis, Mo. At the time of the accident here in question, they were driving along the Dixie Highway from Sewanee towards Cowan. Plaintiff was traveling along the same highway in the same direction, until a moment before the collision, when he turned across the highway to enter the premises of J. G. Hawkins, whither he was going for the purpose of getting some hay.

The direction of the Dixie Highway at the place of the accident (with reference to the points of the compass) is not disclosed by the record; but it appears that, to one approaching from the direction of Sewanee, the home of J. G. Hawkins was on the left-hand side of the highway, and a private lane led from the highway to Hawkins' house.

In addition to his own testimony, the plaintiff introduced the testimony of Otto Mitchell, J. G. Hawkins and Roy Hickerson.

According to the testimony of plaintiff and Otto Mitchell, when plaintiff reached a point in the highway opposite the mouth of the aforementioned Hawkins lane, he pulled his horse to the extreme right-hand side·of the highway in order to "make the turn" into the lane and, without looking behind him, pulled his horse and wagon across the road, from the right to the left side of the road, and just as the front wheels of the wagon went into the ditch on the left side of the road the defendants' automobile struck the wagon about the center of its left side. The width of the highway at that point is not shown by the record.

Both plaintiff and Otto Mitchell testify that they had not heard or seen defendants' car, and did not know that it was behind them. They say that several cars had passed them between the "foot of the mountain" and the Hawkins lane, and that they had heard all of them "blow" and had turned out of the road to permit the cars to pass, but that, as before stated, they did not hear anything which indicated the approach of an automobile and did not look behind them immediately before attempting to turn into the Hawkins lane.

Defendant Desmond, who was driving the automobile, states in his deposition, that plaintiff's wagon was about a mile ahead when he first saw it; that he blew his horn "all along" as he approached the wagon; that he pulled up behind the wagon, "slowed down" and shifted into second gear; that, as he couldn't get by the wagon, he blew his horn several times; that plaintiff paid no attention to him and never looked back, but "was laughing and talking to the boy on the wagon with him;" that the car was on the left-hand side of the road and witness was trying to pass on the left side of the wagon; that the wagon pulled over to the right-hand side of the road and witness thought plaintiff was giving him the road and witness "picked up speed" and attempted to pass, but that plaintiff

suddenly pulled the horse and wagon across the road in front of the car without giving any warning whatever; that, at the time plaintiff turned across the road, the head of the car was about the length of the car from the rear of the wagon, and that the car was moving at a speed of not more than ten miles per hour, and that the car was running something like seventeen or eighteen miles per hour at the time it struck the wagon.

In its general outlines, the testimony of each of the other occupants of the car is the same as that of defendant Desmond, but there are differences in some details.

Defendant Logan says that they saw the wagon and began to blow the horn when the wagon was about three hundred yards away; that the front end of the car was about five or ten feet from the wagon when the wagon pulled to the right; that the car was running about fifteen miles an hour up to that time, but when the driver of the car "stepped on the throttle to go by the wagon he might have been going a little over that then;" that Desmond stopped the car in about twenty feet after the wagon turned in front of it; that after the car struck the wagon, "Desmond took his hand off the emergency brake and the machine rolled between 12 and 15 feet down the incline on the side of the road."

Mrs. Emily Logan says, in her deposition, that she was sitting in the middle of the back seat and could see the speedometer, and at the time the wagon turned to the right the car was "going about 15 miles;" that at the time the wagon was "pulled in the path of the machine" the wagon was about three feet from the front end of the machine; that when Mr. Desmond saw the wagon in the path of the machine, he put on the emergency brake and shut off the gas.

Mrs. Desmond says, in her deposition, that Mr. Desmond blew the horn "off and on" for at least a half mile before the car overtook the wagon, and "just kept on blowing it until the wagon pulled to the right-hand side of the road;" that the car had slowed down to something like eight or ten miles an hour when the wagon "swung to the right-hand side of the road"; that the car then "picked up speed and started to pass the wagon when suddenly the driver pulled the horse and wagon directly across the road in front of the car and the car struck the wagon and tore it up some;" that neither of the men on the wagon gave any indication that they were going to turn across the road.

It is seen that, according to defendants' evidence, they were not violating the Act of 1905, Chap. 173 (Shan. New Code 3079a195) which limits the rate of speed at which an automobile may be driven over any public highway to twenty miles per hour; but plaintiff introduced evidence, as a part of his proof in chief, upon which the

jury might have based a finding that defendants were operating their automobile at a greater rate of speed than twenty miles per hour. This evidence is found in the testimony of Mr. J. Roy Hickerson and J. G. Hawkins.

J. Roy Hickerson testified "that he is a practicing attorney at Winchester; that after the accident between plaintiff and defendants, the defendants came to his office to talk the matter over; that he stated to them that he represented the plaintiff and that they had better not talk about the facts of the case, but that the defendants insisted on talking, and stated to him that they were running about 25 miles per hour when the accident happened."

J. G. Hawkins testified that he did not see the accident but reached the scene fifteen or twenty minutes after it happened; that defendants' car was on the side of the road, with its left front wheel "buried in a bank"; that witness made some measurements and observed the ground around the place of the accident; that he found that defendants' car had "slid", or skidded, twenty feet before it hit the wagon, and eighty-five feet after it struck the wagon; that there was a black streak on the road to show that it "slid" as before stated.

The fact that the defendants automobile skidded in the manner stated by Mr. Hawkins might well have been considered by the jury as inconsistent with the testimony of defendants relating to the speed of their car, (Bombard v. Newton, 11 A. L. R. 1402, 1404) and, in connection with the admission made by defendants to Mr. Hickerson, that they were running twenty-five miles an hour, afforded a basis in the evidence for a finding that they were exceeding the speed limit of twenty miles per hour prescribed by law, and were therefore guilty of actionable negligence. Whether, under the facts of this case, such negligence of the defendants was the proximate cause of the collision was clearly a question for the jury to determine. 22 R. C. L. pp. 148-149. No error is assigned upon the charge of the court to the jury, and the charge is not in the record here. We must assume, therefore, that the jury was properly instructed with respect to all the issues of fact arising on the record; and it is a necessary inference from the verdict in favor of plaintiff that the jury found that the automobile of defendants was being driven, at the time of the collision, at an unlawful and dangerous rate of speed, and that this was the proximate cause of the collision and the consequent injuries to plaintiff's person and his wagon.

It is also a necessary inference from the verdict that the jury found that plaintiff was not guilty of any negligence which proximately contributed to his injuries. This finding of the jury cannot be disturbed unless it appears from undisputed evidence that plaintiff was not exercising ordinary care when he drove his horse and wagon

to the right-hand side of the highway and immediately turned across the highway toward the mouth of the Hawkins lane on the left-hand side, without first ascertaining, by looking or by some other adequate means, that there was no automobile or other vehicle approaching from his rear in such close proximity as to endanger his crossing.

The question here is: can it properly be held, as a matter of law, that, under the same circumstances, an ordinarily prudent person would not have acted as plaintiff did?

"Ordinary care is that degree of care which a person of reasonable prudence would exercise under a given state of facts appearing in the evidence in a cause, or in a state of facts similar thereto. This ordinary care may be positive or negative; that is, it may consist of what a person of reasonable prudence would have done under the same or similar circumstances, or of refraining from doing what he would have refrained from doing under these circumstances. What a person of reasonable prudence would have done under the same or similar circumstances must be determined by the jury from their knowledge of mankind, and of how persons of reasonable prudence usually deport themselves in relation to their surroundings." Railroad v. Wade, 127 Tenn. 154, 158.

"The question of contributory negligence, as well as the question of negligence, is ordinarily for the jury. Even though the facts be undisputed as to whether, under circumstances conceded, the conduct of a plaintiff was that of an ordinarily prudent man, the matter should be left to the jury. The court should draw no inference when in doubt, but only in those cases where the evidence is without material conflict, and such that all reasonable men must reach the same conclusion therefrom. It is only in cases where the evidence is susceptible of no other fair inference that the court is justified in instructing the jury, as a matter of law, that the plaintiff has been guilty of contributory negligence which would bar his recovery." Roofing & Mfg. Co. v. Black, 129 Tenn. 30, 36.

"Although automobiles are comparatively new in use, there is nothing novel in the principles of law to be applied with respect to travel in them on the highways. . . . The right of the driver of a horse and that of the driver of a motor vehicle to the use of the highway are equal, and each is equally restricted in the exercise of his rights by the corresponding rights of the other." 24 R. C. L. pp. 1182-1183.

In the instant case, it was not negligence per se for the plaintiff to drive his horse and wagon across the highway, the occupants of the wagon having no knowledge of the automobile following them. It was necessary for him to do so in order to reach his destination, and he was entitled to the use of the left side of the highway in a reasonable way and for a reasonable time to enable him to gain

access to the Hawkins premises. The defendants should not have approached him so closely at such a rapid rate of speed as to make a collision probable. Young v. Cowden, 98 Tenn. 577, 585-6.

The case of Government Street Lumber Co. v. Ollinger, (Ala.), 94 Southern R. 177, is, in its facts, strikingly similar to the instant case, except that, in the Alabama case there was a collision between two automobiles going in the same direction, and the suit was brought by the owner of the rear car against the owner of the front car, and the issue of negligence on account of excessive speed did not arise. The opinion was delivered by the Court of Appeals, and certiorari was denied by the Supreme Court of Alabama on November 2, 1922. (See 94 Sou. R. 922).

In the case last cited (at page 180), the court said:

"When two automobiles are being driven along a public road in the same direction, the relative duties the one owes to the other are to be governed somwhat by the circumstances of the particular case. The driver of the front car owes no duty to the rear or trailing car except to use the road in the usual way, in keeping with the laws of the road, and until he has been made aware of it, by signal or otherwise, he has a right to assume, either that there is no other automobile in close proximity to his rear, or that, being there, it is under such control as not to interfere with his free use of the road in front of or to the side of him in any lawful manner. In the absence of facts or circumstances that would put him on notice of the near approach of another automobile from his rear, the driver may drive slow or fast, select the parts of the road best suited to travel, stop or start at will, or turn into side roads, without the giving of signals of such intentions. Of course the rule would be different on the streets of a city, where the passage of automobiles along the streets is constant and frequent, requiring of all drivers of motor vehicles a high degree of care and watchfulness, this of itself being sufficient notice of the near approach of other cars, and under the same circumstances, known to the driver, the same rule as applied to city streets would apply to county highways; but to be applicable. the facts must be specially pleaded, which is not done in this case.

In a case where the charge is that of simple negligence in the operation of an automobile along the public road, resulting in damage to a car approaching from the rear, the rights of the defendant, as outlined above, would be available to him under the general issue in rebutting the imputation of negligence."

On petition for rehearing, the Alabama court said, among other things, the following, viz:

"It will be observed that the negligence complained of in this case is the sudden turning of the defendant's automobile across the road at a time when plaintiff's automobile was attempting to pass.

There is no allegation or proof that the driver of defendant's automobile was a deaf-mute, day-dreamer, or drinking, or was otherwise incapacitated to expertly handle the machine he was driving, as suggested in appellee's brief. If so, and injury had proximately resulted therefrom, such would have been the subject of pleading and proof. Nor do we think the traffic on country roads has reached proportions where it can be said, as matter of law, that a person is guilty of negligence if, in crossing the road, he fails to stop, look, or listen. For aught that appears in this case, either by pleading or proof, the accident occurred on a country road, the drivers of both cars were capable and normal, the driver of defendant's car had no notice of the approach of a car from his rear, and no reason to believe one was in close proximity to him, or if there was that it was not under complete control. Under these conditions he turned slightly to the right of the road, preparatory to turning into a road leading off from the main road, to the left, and upon reaching the side road turned into it, thus suddenly bringing his car across the road at a time when plaintiff's car was attempting to pass, after having acquitted itself of negligence, and mistakenly believing that defendant's driver had heard the warning and accorded it the right of way.

"If these are the facts in the absence of evidence of subsequent negligence the accident was unavoidable, and neither party could recover in an action for simple negligence."

We think the principles enunciated in the foregoing excerpts from the opinion of the Alabama court are sound, and it follows that there was no positive legal duty resting on plaintiff, under the circumstances of the present case, to anticipate the presence of defendants close behind him and give notice, by signal or otherwise, that he was about to turn across the road. Whether he exercised ordinary care in turning his horse and wagon across the road, in the manner and under the circumstances shown by the proof, was a question for the jury to decide, and the finding of the jury, approved by the trial judge, is conclusive on this court.

It may be well to say, in passing, that, but for the negligence of defendants in operating their automobile at an unlawful and dangerous rate of speed, as found by the jury, the collision here in question might well have been characterized as an "unavoidable accident", as was that which gave rise to the Alabama case.

The collision involved in the case of Gary v. Powell, 8 Higgins 363, cited in defendants' brief, occurred at a street intersection in the populous city of Memphis, and the trial court found as a fact that the driver of the leading car gave no signal indicating his purpose to turn across the path of a car following him, and an ordinance of the city required that such signals be given. The statement of the

learned judge who prepared the opinion in Gary v. Powell, supra, that "We see nothing unreasonable in the raising of the duty of warning to the positive plane" (p. 366), should be confined to the facts of the case there in judgment. At any rate, it should not be extended so as to impose upon the driver of a vehicle on a highway in the open country the absolute legal duty, under any and all circumstances, of giving a premonitory signal indicating his purpose to turn his vehicle across the roadway.

"Negligence is a failure to exercise the degree of care demanded by the circumstances". (20 R. C. L. p. 9), and "acts that might be considered prudent in one case may be deemed to be negligent in another". (Id. p. 11). Hence, conduct which would be consistent with ordinary care under some circumstances might constitute negligence under different circumstances. This distinction is made by the court in the Alabama case before cited, (with reference to the operation of automobiles), as between a country road and the streets of a populous city.

For the reasons stated, we are of the opinion that the trial court did not err in overruling the motion of defendants for a directed verdict, and that there is material evidence to support the verdict of the jury.

The assignments of error are therefore overruled, and the judgment of the circuit court is affirmed, and judgment will be entered accordingly. The costs of the appeal will be adjudged against the defendants Desmond and Logan and the surety on their appeal bond.

Plaintiff will be entitled to a sale of the Nash touring car attached in the cause for the satisfaction of the judgment. It was stated by one of the counsel in oral argument at the bar that the attachment had been discharged upon the execution of a forthcoming bond, but the record before us contains no such bond, nor any evidence of its execution.

If counsel desire, the cause may be remanded to the Circuit Court of Franklin county for the sale of the aforesaid automobile under the orders of that court, or if the automobile was discharged upon the execution of a forthcoming bond, then for proper judgment on such bond.

Judge DeWitt concurs, but Judge Crownover did not participate, having been of counsel in the trial court.