CALDWELL v. HODGES.—77 S. W. (2d) 817.

Middle Section. April 28, 1934.

Petition for Certiorari denied by Supreme Court, January 12, 1935.

Thos. H. Peebles, of Columbia, for plaintiff in error.

R. S. Hopkins, of Columbia, and J. R. Morris, of Waverly, for defendant in error.

FAW, P. J. In the month of June, 1931, there was a collision between two automobiles on the Jackson highway about a mile and a half north of Columbia, Tenn., and, as a result thereof, Mary Frances Freeman, an occupant of one of the two automobiles, lost her life.

One of the two cars which thus collided was a "high powered" Buick coupé owned and driven at the time by Howell Caldwell, who was accompanied by a young lady, Miss Vera Nicholls.

The other of the two cars was a "one-seated T-model" Ford, without a top, owned by the Richardson Lumber Company, a corporation, and driven at the time by Murphy Lineberger, a young man about twenty years of age, who was accompanied by the deceased, Miss Freeman, and William Cranford, also a young man about twenty years of age. The three occupants of the Ford were on the same seat, with Miss Freeman seated between Lineberger and Cranford.

It is uncertain on the record whether the collision occurred on June 3d, a few minutes before midnight, or in the early morning of June 4th, a few minutes after midnight; but this is not material to the issues in this case.

Miss Freeman was rendered unconscious by the impact of the collision, and died about two days thereafter without regaining consciousness.

On September 24, 1931, Mrs. Malcy Hodges, administratrix of the estate of said Mary Frances Freeman, deceased, sued Howell Caldwell, Murphy Lineberger, and Richardson Lumber Company in the circuit court of Maury county for $25,000 as damages for the alleged wrongful death of her intestate.

The case was tried twice below, and, on the first trial, the Richardson Lumber Company was discharged from liability, but a new trial was granted as to Caldwell and Lineberger.

At the second trial, the jury found for the plaintiff and placed the damages at $3,000, but attempted to apportion the damages, "$2,000 to Caldwell,—$1,000 to Lineberger."

The plaintiff was permitted by the court to dismiss her suit against Murphy Lineberger, and thereupon a judgment was rendered in favor of plaintiff and against defendant Howell Caldwell for $2,000 and costs. After his motions for a new trial and in arrest of judgment had been overruled, defendant Caldwell appealed in error to this court and has assigned errors here.

It is seen that there are but two parties to the cause in this court, and, for convenience we will refer to Mrs. Malcy Hodges, administratrix, etc., as plaintiff and to Howell Caldwell as defendant.

The plaintiff's declaration, as originally filed, contained two counts and to this declaration defendant Caldwell interposed a demurrer which was overruled by the trial court. The action of the

trial court judge, in overruling this demurrer, is the basis of defendant's first assignment of error in this court.

The demurrer asserts that each count of said declaration is insufficient and fails to state a cause of action against defendant Caldwell, in that, each count of the declaration shows that the proximate cause of the accident was the negligence of another or others, to-wit, Murphy Lineberger, the Richardson Lumber Company, and the plaintiff's intestate.

The first count of the declaration, after naming the parties and laying the damages at $25,000, is as follows:

"That the plaintiff is a citizen of the State of Tennessee, duly appointed and qualified administratrix of the estate of Mary Frances Freeman, deceased, who was fatally injured on the morning of June 4th, 1931, in an automobile accident on the Jackson Highway in Maury County, Tennessee, some one and one-half miles north of Columbia, from which injuries she died on June 6th, 1931; and that at the time of her death, she was twenty (20) years of age, was sound in body and mind, with a prospect of a long and useful life, and was a graduate of High School.

"That on the night of June 3rd, 1931, the deceased, Mary Frances Freeman, with a number of other young people, attended a dance or social gathering in Columbia, Maury County, Tennessee, and about midnight the deceased and one William Cranford as the invited guests of the defendant Murphy Lineberger left the entertainment in a one seated automobile, belonging to the defendant Richardson Lumber Co., in the possession of and driven by the said Murphy Lineberger, when the said Lineberger drove said motor vehicle with his guests to the Riverside Filling Station, situated some one and one-half miles north of Columbia, Maury County, Tennessee, on the Jackson Highway, where the said Murphy Lineberger and his guests, the deceased and William Cranford, stopped and took midnight lunch; and about 1 o'clock A. M. on June 4th, 1931, the three occupants of said Richardson Lumber Co. motor vehicle, resumed their journey with the said Murphy Lineberger driving the car, the motor vehicle at the time of their departure being headed about north, and located on the east side of the Jackson Highway, near the front of the Riverside Filling Station, when the defendant Lineberger drove north around a telephone pole, and two or three automobiles that were parked on the east side of the Jackson Highway, then turning the automobile to the left (west), when the said Lineberger, carelessly, negligently and without due caution, and without bringing the Richardson Lumber Co. motor vehicle that he was driving to a stop, and in violation of law, drove said motor vehicle upon and partly across the Jackson Highway, the front wheels of the car being across the center line of the Highway and the rear wheels about the center line of said highway, and

while his car was in this position, the defendant Howell Caldwell, who was the owner of and driving a Buick Coupe or Roadster Motor vehicle, a very high powered car, approached the point on the Jackson Highway, where the Richardson Lumber Co. car had appeared on said highway, the Caldwell car going north and being run at the time at a furious, unlawful, careless, negligent and reckless rate of speed, from fifty to sixty miles per hour in the nighttime and not having his car under control, collided with or struck the rear left side of the Richardson Lumber Co. motor vehicle being driven by the defendant Murphy Lineberger, with such force and impact that the Richardson Lumber Co. car was knocked some thirty feet or more across the highway, and as a result, the deceased Mary Frances Freeman was thrown out of the Richardson Lumber Co. car, she striking the shoulder of the highway or bank some fifteen feet further away, with such violent force, that she was fatally injured and died as hereinbefore averred.

"The plaintiff further avers, that the defendants, Murphy Lineberger, Richardson Lumber Co. and Howell Caldwell, were resident in Columbia, Maury County, Tennessee, and were perfectly familiar with the location of the Riverside Filling Station, and to continuous traffic on and over said highway at and about said filling station, both day and night, and the apparent dangers incident to travel on said highway, all of the defendants not infrequently driving over and on said highway and to or by said filling station, and were familiar with the parking space around said filling station, and knew of the inherent dangers of driving upon and over said Jackson Highway and in leaving the parking spaces around said filling station; knew the great amount of traffic on said highway in front of said filling station, and its congested conditions, the said Lineberger left said filling station and without stopping the Richardson Lumber Co. car in which he had his guests, the deceased and William Cranford, he carelessly, negligently and unlawfully drove upon said highway, without observing whether or not the traffic thereon was such that he could safely enter upon said highway, without danger to himself, the deceased and William Cranford, the other occupants of the car which he was driving, his negligence in so doing concurring with the negligence of the defendant Howell Caldwell herein shown, resulting in the death of Mary Frances Freeman.

"That the defendant, Howell Caldwell, although familiar with the location and traffic conditions on said Jackson Highway and at and about the Riverside Filling Station located thereon, in approaching said filling station and passing same to the place of collision, resulting in the death of Mary Frances Freeman; and although the Jackson Highway at the filling station and for six or eight hundred feet in the direction from which the defendant, Caldwell, was traveling at the time of the accident, was practically

straight, and his view unobstructed, he was nevertheless driving his car at the time at such a terrific, dangerous, reckless, careless and negligent rate of speed, and that by reason thereof he had lost control of his car and is guilty of gross negligence in the killing of the deceased.

"It is averred that the deceased, Mary Frances Freeman, at the time of her death, was a visitor in Columbia, Tennessee, and was not familiar with the traffic conditions on the Jackson Highway, nor was she familiar with traffic and parking conditions around and about, and at the Riverside Filling Station, nor the amount of traffic going and coming along said highway, and particularly around said filling station at the hour of day which she was fatally injured, and from the result of which she died.

"The plaintiff avers that the defendant, Murphy Lineberger, at the time of the accident, resulting in the death of Mary Frances Freeman, was incompetent to drive an automobile upon the public highways, and that this fact was well known, or should have been known by the Richardson Lumber Company, whose car he was driving, and in which the deceased was riding at the time of her death. That the defendant, Murphy Lineberger, at the time of the death of the deceased, was using and driving said car with the full knowledge and consent of the defendant, Richardson Lumber Company, wherefore, both the said Murphy Lineberger and the Richardson Lumber Company are liable in damages to the plaintiff for the negligent, careless, wrongful and wanton killing of Mary Frances Freeman, on the date aforesaid, and in the manner aforesaid.

"Wherefore, plaintiff sues the defendants, and demands a jury to try the case.

With respect to defendant, Caldwell, the second count of the declaration merely reiterates the averments of the first count, the second count being added in order to make an additional averment that the Ford car was being used at the time in question by Lineberger in the business of the Richardson Lumber Company.

It is said in support of the first assignment of error that, according to the averments of the declaration, defendant, Caldwell, was not guilty of any actionable negligence which proximately caused the collision, on concurred with the negligence of other defendants in causing the collision, in that he could see for several hundred feet before he reached the Riverside Filling Station; that he had a clear and unobstructed road in front of him; that he had a right to presume that the Ford car, which was "parked clear off of the highway," would remain stationary and not be driven upon the highway until he (Caldwell) had passed it; and that, under these circumstances, the rate of speed of his car (50 to 60 miles per hour) was not unlawful.

■ We are not prepared to agree that, at the time of the collision in question, it was lawful to run or drive an automobile on a highway in this state at a speed of 50 miles per hour. It is averred in the declaration that the Caldwell car was being run at the time at an "unlawful . . . rate of speed, from 50 to 60 miles per hour." As a matter of pleading, this was sufficient to bring the case within any statute then existing which prescribed a maximum speed limit of any rate less than 50 miles per hour. Cochran v. Pavise, 1 Tenn. Civ. App., 1, 12, 13.

At the time here in question, the Act of 1925, chapter 132, was in force, and under that act it was unlawful to run or to drive any automobile upon any road, street, highway, or any public thoroughfare at a rate of speed in excess of 30 miles per hour. The Act of 1929, chapter 87, if valid, would have operated to repeal the aforesaid Act of 1925, chapter 132, and any and all other prior statutes prescribing specified miles per hour maximum speed limits for motor vehicles; but, in the case of Godsey v. State, 162 Tenn., 568, 39 S. W. (2d), 286, the Act of 1929, chapter 87, was declared unconstitutional and void, because its caption was insufficient to chamber the body of the act.

Thereafter, by the Act of 1931, chapter 82, passed and approved July 2, 1931, all prior statutes prescribing specific miles per hour maximum speed limits for motor vehicles were repealed; but this latter act was passed subsequent to the collision here involved, and, of course, is not a factor in the decision of this case.

■■ However, the opinion in Godsey v. State, supra, holding the Act of 1929, chapter 87, unconstitutional and void, was filed on June 10, 1931, which was five or six days after the collision in which plaintiff's intestate was killed; so that, as it is the duty of every citizen to presume that an unrepealed statute is valid until it is otherwise declared by the courts, defendant Caldwell should not be held guilty of negligence per se merely because he was driving his car at a speed in excess of 30 miles per hour. Woodfin v. Insel, 13 Tenn. App., 493, 502. Hence the averment that defendant, Caldwell, was driving his car at an unlawful rate of speed, from 50 to 60 miles per hour (if standing alone), would not afford a sufficient predicate in pleading for proof of actionable negligence.

■ But it will be observed that it is averred in the declaration that defendant Caldwell's car, while being driven by him at a furious, unlawful, careless, negligent, and reckless rate of speed, from 50 to 60 miles per hour, in the nighttime, and not under control, collided with or struck the rear left side of the Ford car in which the deceased was riding, with such force that said Ford car was knocked 30 feet or more across the highway, and, as a result, the deceased was thrown out of the car and struck the shoulder of

the highway or bank 15 feet further away with such violent force that she was fatally injured and died, etc.

When the averments just stated are taken in connection with the averments with respect to the great amount of traffic on the Jackson highway in front of the Riverside Filling Station, and the dangers incident to the parking of cars around the filling station and in leaving said parking spaces, and that these things were well known to defendant Caldwell, we are of the opinion that the declaration states a good cause of action under the common law against defendant Caldwell.

The quantum of care required of the driver of a motor vehicle is to be measured by the exigencies of the particular situation, and accordingly varies with the surroundings, as the likelihood of causing injury is great or small. The required care is commensurate with the risk of injury to others, having in view the condition of the traffic at the time and place, and the nature and condition of the machine being operated. Berry on Automobiles (6th Ed.), section 162; Leach v. Asman, 130 Tenn., 510, 513, 514, 172 S. W., 303; Taylor v. Arnold, 2 Tenn. App., 246, 251.

The rule applicable here is the same in principle as the well-settled rule governing the operation of railroad trains, viz.: "While no rate of speed is of itself negligence, it may be negligent to run a train at a high rate of speed through a populous community and over a much frequented crossing, or over a crossing where the view of the track is so obstructed as to render the approach dangerous. This is true although the crossing at which the accident occurs is in a country district, where the crossing is much used by the public." Louisville & N. Railroad v. Frakes and Payne, 11 Tenn. App., 593, 605, and authorities there cited.

We think the demurrer to the original declaration was properly overruled and the first assignment of error is likewise overruled.

Through his second assignment of error, defendant Caldwell complains of the action of the trial court in overruling his demurrer to two additional counts (numbered 3 and 4), which the plaintiff was permitted, over defendant's objection, to add, by way of amendment, to her declaration on November 17, 1932, a day in the midst of the last trial below.

In each of the counts thus added to the declaration, plaintiff incorporated the first count by reference, and amplified the averments of the first count with respect to the large number of automobiles that visited the Riverside Filling Station and traveled the Jackson highway in its vicinity, both day and night, and then introduced an element of damage not mentioned in the declaration previously filed, viz., that, by reason of said accident, the estate of the decedent incurred much expense for medical attention, hospital bills,

nurses, and medicine bills, and for a proper and decent burial of the body of the decedent.

Defendant Caldwell promptly filed a demurrer to the said third and fourth counts of the declaration, which demurrer was overruled by the trial court. Defendant predicated his said demurrer upon two grounds, the first of which was that plaintiff was seeking, for the first time, by said amendments to her declaration to recover for doctor's bills, medicines, nurses, hospital bills, and burial expenses, and it appears from the declaration that the suit for these things is brought more than twelve months after the date of the accident on which the suit is based, and that the statute of limitations has, therefore, barred a recovery for these items.

It is seen that the proposition advanced by the above-stated demurrer is that, by said amendatory counts, the plaintiff was seeking to introduce a new cause of action into the case after the period of the statute of limitations had expired.

■ If the amendment did introduce a new cause of action, the demurrer should have been sustained. Macklin v. Dunn, 130 Tenn., 342, 170 S. W., 588, Ann. Cas. 1916B, 508.

■ But an amendment claiming increased damages, or additional items of damages, for the same wrongful act seasonably pleaded, does not introduce a new cause of action within the statute of limitations. 37 C. J., p. 1079, section 517; 49 C. J., pp. 526, 527, section 696; Little Rock Traction & Electric Co. v. Miller, 80 Ark., 245, 96 S. W., 993; Anderson v. Acheson, 132 Iowa, 744, 110 N. W., 335, 9 L. R. A. (N. S.), 217, 224; Hall v. Pennsylvania Railroad Co., 257 Pa., 54, 100 A., 1035, L. R. A. 1917F, 414, 418; Puritan Coal Mining Co. v. Pennsylvania Railroad Co., 237 Pa., 420, 85 A., 426, Ann. Cas., 1914B, 37, 40, 52; Armstrong v. City of Philadelphia, 249 Pa., 39, 94 A., 455, Ann. Cas., 1917B, 1082, 1086; Quirk v. Metropolitan Street Railway Co., 200 Mo. App., 593, 210 S. W., 106,. 108; Scanlon v. Galveston, etc., Railway Co. (Tex. Civ. App.), 86 S. W., 930, 932; Gulf, B. & K. C. Railway Co. v. O'Neill, 32 Tex. Civ. App., 411, 74 S. W., 960, 961; Coulter v. Gulf, C. & S. F. Railway Co. (Tex. Civ. App.), 248 S. W., 788, 791.

The remaining ground of the demurrer to the third and fourth counts is the same as the demurrer to the original declaration which was properly overruled, as we have held in disposing of the first assignment of error. The second asssignment of error is overruled.

It may be well to say that we do not mean to be understood as holding that plaintiff could lawfully maintain an action for expense of the burial of her intestate. That question was not raised by the demurrer, but the trial judge did not include such expense as an element of damages in his charge to the jury.

■ Through his third assignment, defendant Caldwell complains of certain *parts* of two separate paragraphs of the charge of the

trial court to the jury. In order that the meaning of the learned trial judge may be better understood, we quote these paragraphs in full, italicizing the parts copied into the third assignment of error.

The first of the two paragraphs in question is as follows:

"*The said Murphy Lineberger had the right to drive his car on and along the Jackson Highway. He had the right to stop at said filling station to procure refreshments or for other purposes,* however, as before stated, it was his duty, in turning from the filling station onto the highway to resume his drive, to exercise ordinary care and prudence for the safety of his guest, Miss Freeman."

The second of the two paragraphs in question is as follows:

"*The defendant, Howell Caldwell had the right to drive his car along the Jackson Highway at the time and place where the accident occurred, however he had no exclusive right to use the highway* and it was his duty while using the highway and even while driving upon the right hand side thereof, to exercise ordinary care and prudence under all the surrounding facts and circumstances to avoid injuring others who might be in or upon said highway and using the same."

In support of this assignment of error, it is said in the brief for defendant Caldwell that the record fails to disclose that there was any contention, either by the plaintiff or by defendant Caldwell, that defendant Lineberger had no right to drive his car on and along the Jackson highway, nor any contention that Lineberger did not have a right to stop at said filling station to procure refreshments or for other purposes; nor was there any contention that defendant Caldwell did not have the right to drive his car along the Jackson highway at the time and place where the accident occurred, nor any contention that defendant Caldwell had an exclusive right to use the highway. It is then said that the "suggestions" by the trial judge (in the excerpts from the charge above quoted) were "beside the case and not within the issues involved, and might be calculated to inflame the minds of the jury against defendant Caldwell."

The instructions which it is thus sought to criticize stated, in our opinion, fundamental and correct rules of law applicable to the rights and duties of the defendants Lineberger and Caldwell, and it was proper for the court to give them to the jury as a basis for additional instructions which followed. The third assignment of error is overruled.

Through his fourth assignment, defendant Caldwell says that the trial court erred in charging the jury as follows:

"It was Caldwell's duty to drive his car at such a rate of speed that he could stop it within the distance his lights would carry or

reveal an object ahead and to keep said car under reasonable control.''

And (in the same connection) in refusing defendant's sixteenth special request, which was as follows:

''The general rule that it is the duty of a traveler on the highway at night to drive his car at such a rate of speed that he can stop within the distance that his lights will carry and reveal an object, is not applicable in the case before you.''

And also in refusing defendant Caldwell's seventh special request, which was as follows:

''The presence of other lights shining upon the place of the accident, as shown in the proof, takes this case out of the rule that a driver at night should drive his car at such a rate of speed that he can stop within the distance that his lights will carry or reveal an object ahead.''

It is apparent that, in giving the instruction criticized by defendant's fourth assignment of error, the trial judge was undertaking to apply the rule announced in the case of West Construction Co. v. White, 130 Tenn., 520, 172 S. W., 301, and subsequent cases in accord therewith, which rule was that, where a person drives an automobile at night in a dark place so fast that he cannot stop and avoid an obstruction within the distance lighted by the lamps of his car, he is guilty of contributory negligence which will bar his action.

The seemingly positive character of the rule of West Construction Co. v. White, supra, was modified by the ruling in the recent case of Main Street Transfer & Storage Co. v. Smith, 166 Tenn., 482, 63 S. W. (2d), 665, 668, wherein it was held that the rule formulated in West Construction Co. v. White was no more than an application to given facts of the familiar rule that the test of negligence is whether the action under scrutiny was in accord with the actions of reasonably prudent men under the same or similar circumstances; that ''exceptional circumstances'' may make ''the applicability of the general rule a question of fact for the jury rather than a question of law for the court,'' and that ''the facts and circumstances of the cases in which the rule is invoked, weighed in the light of observation and experience, must control and direct the ruling of the court in each particular case, as in other negligence cases.''

The undisputed proof in the instant case is that the Riverside Filling Station was brilliantly illuminated by electric lights above and around the roof and within the glass front, to such an extent that the highway in front, for a distance of 100 feet in either direction, and the ''plaza'' around the filling station were as ''light as day.''

Defendant Caldwell entered the Jackson highway from Sixth

avenue, 475 feet south of a point in the highway opposite the center of the filling station, and, as the highway was straight and very slightly upgrade all the way from Sixth avenue to the point of the collision (50 feet north of the center of the filling station), he could see automobiles and other objects within the zone of the filling station lights from the time he entered the highway and turned his car northward.

There is no evidence of the distance that the lights on defendant Caldwell's car "would carry or reveal an object ahead" in a dark place, but such evidence would not have been relevant to the issues, for the reason that defendant Caldwell could see the filling station and objects on the highway in front, and on the intervening space between the filling station and the highway, without the aid of the lights of his car, and when he came within the zone of the lights of the filling station (150 feet from the point of the collision), the lights on his car were necessarily ineffective because of the more powerful lights at the filling station, which latter lights revealed objects ahead of him on the highway and on the adjoining "plaza" of the filling station more clearly than the lights of his car would have done if the filling station lights had not been burning.

We think, therefore, that it was error to charge the jury that "it was Caldwell's duty to drive his car at such a rate of speed that he could stop it within the distance his lights would carry or reveal an object ahead;" and it was error to refuse to charge defendant Caldwell's sixteenth and/or seventeenth request, particularly the seventeenth request, supra.

But we are forbidden by the Act of 1911, chapter 32 (Code, section 10654), to reverse the judgment or set aside the verdict "on the ground of error in the charge of the judge to the jury . . . or for any error in any procedure in the cause," unless, in our opinion, "after an examination of the entire record in the cause, it shall affirmatively appear that the error complained of has affected the results of the trial."

Our Supreme Court has said that this statute must be given effect, unless the error invaded some constitutional right of the parties. Hamblin v. State, 126 Tenn., 394, 400, 150 S. W., 89.

In view of the facts we have stated, we are unable to see how the instruction criticized by the fourth assignment of error could have influenced or affected the verdict of the jury to the prejudice of the defendant Caldwell, and it was, therefore, not reversible error. Tennessee Central Railway Co. v. Umenstetter, 155 Tenn., 235, 239, 291 S. W., 452. The fourth assignment of error is overruled.

Through his fifth assignment defendant Caldwell asserts that the trial court erred in overruling the forty-fifth ground of his motion for a new trial, which was that the verdict of the jury was er-

roneous because the defendants were sued jointly for personal injuries, trespass, or other tort, and both defendant Lineberger and defendant Caldwell were found guilty; the jury assessed several damages against each defendant, or attempted to apportion the damages.

It appears from the bill of exceptions that when the jury returned into court, after having retired to consider its verdict, the foreman of the jury handed to the court the declaration in the case, with a paper attached thereto, which reads as follows, "We, the Jury, find for the Plaintiff and place the damage at $3,000—$2,000 to Caldwell—$1,000 to Lineberger," whereupon the jury, at the direction of the court, retired from the courtroom and there was an extended colloquy between the court and counsel with respect to the form of the verdict, and, at the conclusion of this colloquy, the jury was brought back into court and the following occurred:

"Court: Turn this way gentlemen. Your verdict reads: 'We, the Jury, find for the Plaintiff, and place the damage at three thousand & No/100 ($3,000) dollars,—$2,000 against Mr. Caldwell and $1,000 against Mr. Lineberger.' Now we want to know whether or not you meant that the plaintiff shall have and recover of both Lineberger and Caldwell, $3,000? Jurors: Yes, $3,000 total— all agree. Court: You intended by that verdict that plaintiff should collect it out of one or both of them; if she couldn't get it out of one, get it out of the other? Mr. Denton (Juror) We intended $2,000 against Mr. Caldwell and $1,000 against Mr. Lineberger. (Jurors all jointly and severally agree that that was what they intended.) Court: And the $1,000 can't be collected out of Mr. Caldwell? Jurors: No. Court: Nor the $2,000 out of Lineberger,—win or lose, each man to be responsible for his own judgment? Jurors: Yes. Mr. Garner: That is the view of all of the jury—that is the view of all present? Jurors: Yes, all Jurors. Court: We'll let the Jury retire. Jury retires."

Upon the last-mentioned retirement of the jury, there was a further colloquy between the court and counsel, at the conclusion of which the jury returned into court and the following occurred:

"Court: Is that your verdict,—'We the jury, find for the Plaintiff, and fix the damage at $3,000—$2,000 against Caldwell and $1,000 against Lineberger'—so say you all, Gentlemen of the Jury? Jurors: (In reply to question by Court) Yes. And thereupon the court discharged the jury."

When the trial court overruled defendant Caldwell's motion for a new trial, the plaintiff, upon leave of the court obtained on plaintiff's motion, dismissed its suit against defendant Lineberger. Defendant Caldwell thereupon filed a motion in arrest of judgment

based substantially upon the same grounds as the forty-fifth ground of his motion for a new trial.

Defendant Caldwell's sixth assignment of error is predicated on the action of the trial court in overruling his motion in arrest of judgment.

We are of the opinion that the ultimate question presented by defendant Caldwell's fifth and sixth assignments of error was directly decided adversely to his contention in the case of Nashville Railway & Light Co. v. Trawick, 118 Tenn., 273, 99 S. W., 695, 10 L. R. A. (N. S.), 191, 121 Am. St. Rep., 996, 12 Ann. Cas., 532, wherein it was held that where two or more parties are sued jointly for personal injuries, trespass, or other tort, and both or all are found guilty, the jury cannot assess several damages against each defendant, but the damages must be assessed jointly, against all found guilty jointly, although all may not be equally culpable.

However, it was further held in that case that, where, in an action against two parties sued jointly for personal injuries, a verdict is found and returned in favor of plaintiff against both defendants, but improperly assessing several damages, and a judgment is entered against each defendant for the separate sums so assessed, the court may, on motion of plaintiff, even after judgment is entered, dismiss the case as to one defendant, after granting a new trial as against him, and render judgment against the other alone for the amount of the verdict awarded against him.

We are of the opinion that the case just cited supports the rulings of the trial court with respect to the matters involved in the fifth and sixth assignments of error in the instant case, and these assignments are overruled.

At the close of all the evidence, defendant Caldwell moved for peremptory instructions in his favor on the ground that there was no evidence to support a verdict against him, and that the contributory negligence of Miss Freeman barred a recovery against him (Caldwell).

He also asserts that there was no evidence to support the verdict of the jury. His seventh assignment of error is based on these propositions, both of which require an appraisal of the evidence from the same viewpoint, for if there was material evidence to take the case to the jury, there was sufficient evidence to support the verdict.

It is not within the province of this court to ascertain whether or not the verdict is supported by the preponderance of the evidence, for conflicts of testimony merely present issues for the jury, and it would serve no useful purpose to review all the evidence in this opinion. The function of this court in jury cases is not to make findings of fact, but merely to ascertain whether

or not there was evidence which required the submission of the issues to the jury, and (if the case was submitted to the jury) whether or not there was sufficient evidence to support the verdict. An assignment in this court that the trial court erred in overruling a motion for a directed verdict, or an assignment that there was no evidence to support the verdict of the jury, presents a question of law, and not an issue of fact. Section 10620 of the Code, requiring the Court of Appeals to file written findings of fact, has no application to a case tried by a jury. Anderson v. Stribling, 15 Tenn. App., 267; De Kalb County v. Tennessee Electric Power Co., 17 Tenn. App., 343, 67 S. W. (2d), 555.

 It is a well-settled rule that, in disposing of a motion for a directed verdict, the trial judge must take the most favorable view of the evidence supporting the rights asserted by the party against whom the motion is made, and disregard all countervailing evidence. Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn., 551, 556, 249 S. W., 984; Elmore v. Thompson, 14 Tenn. App., 78, 81.

 The credibility of the witnesses is peculiarly a matter for the jury to determine; and if the witnesses have given substantial testimony bearing on the issues, to which the jury might, in the proper exercise of its functions, give credit, it is error for the court to direct a verdict in opposition to such testimony on the ground that the witnesses are unworthy of belief. Anderson v. Stribling, supra, page 279 of 15 Tenn. App., and other cases there cited.

 Plaintiff's intestate, Mary Frances Freeman, was riding as the guest of Murphy Lineberger, the driver of the Ford car, and the negligence of Lineberger was not imputable to her. Stem v. Interurban Railway, 142 Tenn., 494, 508, 221 S. W., 192. She lived in a distant county and was a visitor in Columbia. She was wholly unfamiliar with the Riverside Filling Station and its surroundings. Upon the facts of this record, the question of her contributory negligence was for the jury to determine. Dedman v. Dedman, 155 Tenn., 241, 291 S. W., 449, and other cases there cited.

The Riverside Filling Station was a place of good repute for the sale of gasoline and oil for automobiles and for serving cold drinks, lunches, and "midnight suppers," and had a large patronage. In addition to the people visiting the Riverside Filling Station in automobiles, the Jackson highway was a much-traveled north and south thoroughfare. These facts and the conditions surrounding the filling station were admittedly well known to defendant Caldwell.

There is evidence that the Ford car in which deceased was riding was driven westward from the parking space at the filling station

across the highway for a distance of twenty-three feet, at a speed of six to eight miles per hour, in view of defendant Caldwell (if he was looking ahead) before the collision. More than one-half of the Ford car had crossed the "white line" which marked the center of the highway when defendant Caldwell's car struck the left rear wheel of the Ford with such force and violence that the Ford car was thrown twelve or fifteen feet, and its occupants were thrown about thirty-six feet and against an embankment on the west side of the highway. There was evidence of "skid marks" on the highway, indicating that defendant Caldwell had applied his brakes and his car had skidded twenty-five or thirty feet before it struck the rear of the Ford which was near the center of the highway.

There was testimony that defendant Caldwell stated later that he was running at the rate of forty miles an hour at the time he applied his brakes thirty feet from the point of the collision. The jury could look to the effect of the impact as a circumstance to be weighed in ascertaining the rate of speed of Caldwell's car. Collins v. Desmond, 1 Tenn. App., 54, 60; Berry on Automobiles (6 Ed.), sec. 1287.

There was ample room on Caldwell's right side of the highway for his car to have passed to the rear of the Ford, and the only explanation offered of his failure to thus pass the Ford and avoid a collision is that he was so close to the Ford when he saw it that all he could do was to apply his brakes, and that the situation thus presented constituted an "emergency" or "sudden peril" which excused his failure to avail himself of the opportunity to pass to the rear of the Ford.

Defendant Caldwell must be held to have seen what he could have seen if he had been maintaining a proper lookout ahead, and it was for the jury to say whether or not he was negligent as charged, and whether such negligence was the proximate cause of the collision and the resulting death of plaintiff's intestate. Berry on Automobiles (6 Ed.), section 188. The seventh assignment of error is overruled.

The eighth (and last) assignment of error complains of the refusal of the trial judge to give in charge to the jury four special requests of defendant Caldwell, numbered 12, 13, 14, and 15. All of these requests relate to the defense of "sudden peril" or "emergency" interposed by defendant Caldwell.

It is well settled in our jurisprudence that one who, through the negligence of another and not through his own negligence, suddenly finds himself in a position of peril, and is compelled to act instantly to avert an injury, is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a

position might make, even though he did not make the wisest choice. Power Packing Co. v. Borum, 8 Tenn. App., 162, 169, and authorities there cited.

■ But the driver of an automobile cannot invoke the emergency rule just stated where his own negligence led him into the emergency. Cullom v. Glasgow, 3 Tenn. App., 443, 449.

On this subject of "sudden emergency" the trial court charged the jury as follows:

"If the defendant Lineberger suddenly drove his car upon the highway immediately in front of Caldwell's car, while he, Caldwell, was driving along the highway exercising ordinary care and prudence, so as to create a sudden emergency, then it was Caldwell's duty to exercise ordinary care under the circumstances to avoid a collision and injury, and if he did so upon that occasion, then he would not be liable though it may appear now that a different course on his part would have been a better and safer course. But of course this principle of law would have no application if the sudden emergency was brought about by the negligence of the said Caldwell, and if it was so brought about you would determine the issues in the case under the law as explained in the other parts of this charge."

■ ■ Three of defendant Caldwell's four requests involved in his eighth assignment of error were devoid of any reference to the rule that "one cannot shield himself behind an emergency created by his own negligence," and for that reason should not have been charged. The other (the twelfth request) was sufficiently covered by the above-quoted excerpt from the charge given to the jury.

The essential facts of the case of Cullom v. Glasgow, supra, in so far as they called for an application of the doctrine of "emergency" or "sudden peril," were quite similar to the facts of the instant case. The eighth assignment of error is overruled.

This disposes of all the assignments of error. The judgment of the circuit court is affirmed and judgment will be entered here in favor of the plaintiff, Mrs. Malcy Hodges, administratrix, etc., and against defendant Howell Caldwell, for $2,000, with interest thereon from the date of the judgment below (November 18, 1932), and for the costs of the cause accrued in the circuit court.

The costs of the appeal will be adjudged against defendant Caldwell and the surety on his appeal bond.

Crownover and DeWitt, JJ., concur.

## ON PETITION FOR A REHEARING.

FAW, P. J. Howell Caldwell, defendant below, and hereinafter called defendant, appealed in error to this court from a judgment

of the circuit court of Maury county for $2,000 and costs against him and in favor of Mrs. Malcy Hodges, administratrix of the estate of Mary Frances Freeman, deceased, hereinafter called plaintiff.

On a former day of the present term an opinion was filed and a judgment entered overruling defendant Caldwell's assignments of error and affirming the judgment of the circuit court.

A petition for a rehearing was filed in due season by defendant Caldwell, through which he insists that his first, second, and seventh assignments of error should have been sustained and plaintiff's suit dismissed, or, at any rate, the judgment should have been reversed and a new trial granted for the error pointed out by his fourth assignment of error.

After a careful and extended consideration of the petition to rehear and the supporting brief, we are satisfied with the conclusions reached in our former opinion. It would serve no useful purpose to repeat or elaborate the statement of our reasons and the authorities upon which we based our opinion that there was no reversible error on the record and that the judgment should be affirmed.

Petitioner insists that our holdings that defendant Caldwell's demurrer to plaintiff's declaration and his motion for peremptory instructions were properly overruled are in conflict with the unreported opinion of this court (by Judge DeWitt) in the case of Mrs. Mattie Haney et al. v. J. W. Thomason, Administrator, Davidson Law, at Nashville, July 2, 1931.

The case just mentioned (to which we will refer as the Haney Case) was an action by the administrator of Mrs. Ora Lee Thomason to recover damages for her alleged wrongful death as a guest of Mrs. Mattie Haney in the latter's automobile while it was being driven southwardly by her son Landon Haney on state highway No. 1, near Una, in Davidson county, Tennessee. As the Haney car approached the place of the accident, two Ford Roadster automobiles owned by the Southern Bell Telephone & Telegraph Company were parked (one immediately in front of the other) on the western shoulder of the highway, facing southward. These two Ford cars were being used and operated by the Southern Bell Telephone & Telegraph Company in repairing its telephone line which ran along the western side of the highway. As the Haney car, a Dodge Sedan, approached, an employee of the telephone and telegraph company (R. A. Newbill) undertook to turn the front or southernmost of the two Ford cars across the highway with the purpose of driving northward toward Nashville. When the left front wheel of the Ford car reached a point about 6 feet over on the highway, the driver of the Haney car, in order to avoid a

collision, turned his car to his left and toward the east side of the highway, and it went across the east shoulder and into a ditch, striking the post of an electric power line and a fence post, and fatally injuring Mrs. Thomason.

In the circuit court the administrator of Mrs. Thomason obtained a verdict, and judgment thereon, for $12,000 against Mrs. Mattie Haney, Landon Haney, the Southern Bell Telephone & Telegraph Company and R. A. Newbill. On appeal in error, this court affirmed the judgment against the Southern Bell Telephone & Telegraph Company and R. A. Newbill, but reversed the judgment and dismissed the suit against Mrs. Haney and Landon Haney—holding that the trial court should have sustained the motion of the Haneys for peremptory instructions, for the reason that, upon the undisputed evidence, the driver of the Haney car was not guilty of actionable negligence.

In the Haney Case, the plaintiff administrator sought to predicate his action upon averments of concurring negligence of the driver of the Haney car and Newbill, the driver of the telephone and telegraph company's car; and in the instant case the plaintiff-administratrix based her action upon concurring negligence of defendant Howell Caldwell, the driver of the Buick car and defendant Lineberger, the driver of the Ford car, but the facts of the two cases are essentially different in their relation to the question of negligence of the driver of the Haney car and the question of the negligence of the defendant Caldwell.

The facts upon which this court rested its conclusion that Landon Haney was free from actionable negligence are disclosed by an excerpt from the opinion in the Haney Case as follows:

"Newbill testified that the Haney car was going along the highway at a rate of speed of about forty-five miles per hour; yet he also said he saw the car coming toward him 800 feet or more away at a moderate rate of speed. He admitted that his Ford car was from eighteen inches to two feet off the traveled highway as the Haney car was coming, until he began to turn across the highway. He did not claim and there is no evidence that he gave any signal of his intention thus to turn his car. He stopped it on the highway directly in the path of the Haney car, although he had seen that car coming toward him some distance away. All of the other witnesses testified that the Haney car was traveling at a speed of about thirty-five miles per hour. The accident occurred at a point about 400 feet south of the Una School House. Just north of this school house there is a slight curve in the road, and then the road is straight to the scene of the accident, 600 to 800 feet, and the view of persons on the highway is straight for a distance of about 1,000 feet. When the Haney car rounded

the curve near the school house Landon Haney noticed a Ford roadster, used as a truck, parked to his right off the side of the traveled way about 300 or 400 feet beyond the school house, headed toward Murfreesboro. The truck which Newbill soon thereafter undertook to drive across the highway was a few feet ahead of this truck and off the highway eighteen inches to two feet as aforesaid. These trucks were stationary when they were seen by Landon Haney. They were parked at that place while the employees of the Telephone and Telegraph Company were engaged in doing some work on a telephone line at a pole near the cars on the right hand side of the highway. On the night before there had been a heavy rain and although the concrete highway was dry, the shoulders and grass plots on each side of the highway were wet and slick.

"As the Haney car approached the place near which the Ford Trucks were parked, there was no movement of the trucks or other indication that either of them was about to be moved or driven onto the concrete highway. Had they remained stationary the Haney car would have passed on without danger to any one; and it was coming on the right hand side of the highway. The paved portion of the highway is twenty feet wide. Landon Haney did not slacken his rate of speed. Mr. and Mrs. H. N. Clouse, of Sparta, Tennessee, were coming toward the same place on their way to Nashville. They were but a very short distance from the place when the accident occurred. Mrs. Clouse was driving their car. She testified that the Ford car or truck was turned right into the highway when the other car was almost at him; that (snapping her fingers) 'he shot out like that, he turned out just as the other car approaching got there.' She said that he turned out suddenly as the Haney car was right at that place, that the Haney car went off the highway to the left, that it almost struck the Ford car. She said that if Landon Haney had turned his car to the right instead of to the left he would have struck the other Ford car. Mr. Clouse testified that the Haney car was about twenty to thirty feet away when the Ford car was turned into the highway. These were witnesses for the plaintiff. Mrs. Steele, another witness for the plaintiff, testified that when the Haney car was about thirty-five feet from the point opposite the Ford cars she saw Landon Haney straighten up and grip the steering wheel, but she did not testify otherwise as to the distance from the Haney car to the Ford car when it was turned into the road. Mrs. Mattie Haney, who was on the front seat of her car, testified that when she saw the Ford car move, her car was twenty-five feet away from it, that the Ford car came out suddenly and turned directly in front of the Haney car. Landon Haney testified that when he

turned the curve he noticed the parked truck on the side of the road and did not see any movement of the truck until he was about thirty feet from it. He said that he did not sound a whistle because he did not have time to take his hand off the steering wheel. He said that he did apply the brake, and it was in good condition. In that emergency he turned his car to the left. There was sufficient room on the left to pass but the rear wheel struck the mud and wet grass and the car skidded over into the ditch. It is immaterial that Haney did not sound his horn at that point, for Newbill admitted that he knew that the Haney car was coming.

"There is no substantial evidence contradicting these statements that the Haney car was about thirty feet from the point opposite the Ford car when it turned into the highway, and that whatever might have been its rate of speed there would have been no accident if the Ford car had not been turned across the highway. It is insisted that Landon Haney should have anticipated that either of these cars so parked off the highway might at any moment be turned onto the highway. It would be an unreasonable imposition of duty upon a motorist traveling on the proper side of the highway, with a clear road in front of him, that when he should see another car parked clear off of the highway he could not presume that it would remain stationary until he had passed it. In Lee v. Donnelly, 95 Vt., 121, 113 A., 542, it was held that a motorist who observed within 200 feet away the car of another parked on the righthand side of the street, has the right to presume, after having given notice of his approach, by sounding his horn when within 100 feet of such car, and on failing to hear or see any intentions of a sign to move it, that it will remain stationary until he has passed it. Now while Landon Haney did not blow his horn this indisputably had nothing to do with the accident. The approach of his car was well known to Newbill. In Collins v. Desmonds, 1 Tenn. App., 54, a case relied upon for defendant in error, the plaintiff turned across a highway to enter a cross road, having no knowledge of an automobile approaching from the rear. It was held that it was not negligence per se for him thus to drive his horse and wagon across the highway under the circumstances; the defendant's agent having approached him so closely at a rapid rate of speed as to make a collision possible. This rule of that case is not applicable to the case before us, for Newbill had knowledge of the approach of the Haney car. It is not applicable to sustain the liability of Landon Haney and Mrs. Mattie Haney.

"In our opinion the jury could not reasonably infer that the proximate cause of the accident and injuries was other than the

negligent act of Newbill in turning his Ford car onto the highway directly in the path of the on-coming car. The evidence, uncontradicted, shows that Landon Haney was driving his car on the right side with a clear and unobstructed road ahead of him, and that he had no warning of the intention to place the Ford car in his pathway until such an emergency arose as to compel him to turn his car over suddenly to the left in order to avoid a disastrous collision, that under the circumstances the jury could not reasonably infer that the rate of speed at which Landon Haney was driving his car proximately contributed to the accident and injury. In other words, the speed of the car would not have endangered life or property if the Ford car had not been turned across the highway. The only reasonable inference is that the turning of the Ford car onto the highway was the proximate cause of the accident. It is the settled law that an injury which could not have been foreseen nor reasonably anticipated as the probable result of an act of negligence is not actionable, and such an act is either the remote cause, or no cause whatever of the injury; that one who in a sudden emergency acts according to his best judgment, or, who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not charged with negligence. These rules are set forth in 22 R. C. L., page 21, and 20 R. C. L., page 29, respectively, and were applied in Moody v. Gulf Refining Co., 142 Tenn., 280, 218 S. W., 817, 8 A. L. R., 1243. This doctrine as to the conduct of a party in a sudden emergency is well settled in Tennessee. See also Railroad v. Gurley, 12 Lea, 47; Marble Co. v. Black, 89 Tenn., 118, 14 S. W., 479; Railroad Co. v. Cooper, 109 Tenn., 308, 70 S. W., 72.

"Taking the strongest view of the material determinative evidence tending to support the liability of Landon Haney and Mrs. Mattie Haney, we are of the opinion that it does not afford any substantial basis for a verdict against them. The motion for peremptory instructions in their favor should therefore have been sustained."

In the case now before us, our former opinion points out certain facts, shown by substantial evidence, as follows:

"The undisputed proof in the instant case is that the Riverside Filling Station was brilliantly illuminated by electric lights above and around the roof and within the glass front, to such an extent that the highway in front, for a distance of 100 feet in either direction, and the 'plaza' around the filling station, were as 'light as day.'

"Defendant Caldwell entered the Jackson Highway from Sixth Avenue, 475 feet south of a point in the highway opposite the center of the filling station, and, as the highway was straight and

very slightly upgrade all the way from Sixth Avenue to the point of the collision (fifty feet north of the center of the filling station), he could see automobiles and other objects within the zone of the filling station lights from the time he entered the highway and turned his car northward.

"There is no evidence of the distance that the lights on defendant Caldwell's car 'would carry or reveal an object ahead' in a dark place, but such evidence would not have been relevant to the issues, for the reason that defendant Caldwell could see the filling station and objects on the highway in front, and on the intervening space between the filling station and the highway, without the aid of the lights on his car, and when he came within the zone of the lights of the filling station (150 feet from the point of the collision), the lights on his car were necessarily ineffective because of the more powerful lights at the filling station, which latter lights revealed objects ahead of him on the highway and on the adjoining 'plaza' of the filling station more clearly than the lights of his car would have done if the filling station lights had not been burning. . . .

"Plaintiff's intestate, Mary Frances Freeman, was riding as the guest of Murphy Lineberger, the driver of the Ford car, and the negligence of Lineberger was not imputable to her. Stem v. Interurban Railway, 142 Tenn., 494, 508, 221 S. W., 192. She lived. in a distant county and was a visitor in Columbia. She was wholly unfamiliar with the Riverside Filling Station and its surroundings. Upon the facts of this record, the question of her contributory negligence was for the jury to determine. Dedman v. Dedman, 155 Tenn., 241, 291 S. W., 449, and other cases there cited.

"The Riverside Filling Station was a place of good repute for the sale of gasoline and oil for automobiles and for serving cold drinks, lunches and 'midnight suppers,' and had a large patronage. In addition to the people visiting the Riverside Filling Station in automobiles, the Jackson Highway was a much-traveled north and south thoroughfare. These facts and the conditions surrounding the filling station were admittedly well known to defendant Caldwell.

"There is evidence that the Ford car in which deceased was riding was driven westward from the parking space at the filling station across the highway for a distance of twenty-three feet, at a speed of six to eight miles per hour, in view of defendant Caldwell (if he was looking ahead) before the collision. More than one-half of the Ford car had crossed the 'white line' which marked the center of the highway when defendant Caldwell's car struck the left rear wheel of the Ford with such force and violence that the Ford car was thrown twelve or fifteen feet, and its occupants were

thrown about thirty-six feet and against an embankment on the west side of the highway. There was evidence of 'skid marks' on the highway, indicating that defendant Caldwell had applied his brakes and his car had skidded twenty-five or thirty feet before it struck the rear of the Ford, which was near the center of the highway.

"There was testimony that defendant Caldwell stated later that he was running at the rate of forty miles an hour at the time he applied his brakes thirty feet from the point of the collision. The jury could look to the effect of the impact as a circumstance to be weighed in asecrtaining the rate of speed of Caldwell's car. Collins v. Desmond, 1 Tenn. App., 54, 60; Berry on Automobiles (6 Ed.), section 1287.

"There was ample room on Caldwell's right side of the highway for his car to have passed to the rear of the Ford, and the only explanation offered of his failure to thus pass the Ford and avoid a collision is that he was so close to the Ford when he saw it that all he could do was to apply his brakes, and that the situation thus presented constituted an 'emergency' or 'sudden peril' which excused his failure to avail himself of the opportunity to pass to the rear of the Ford.

"Defendant Caldwell must be held to have seen what he could have seen if he had been maintaining a proper lookout ahead, and it was for the jury to say whether or not he was negligent as charged, and whether such negligence was the proximate cause of the collision and the resulting death of plaintiff's intestate. Berry on Automobiles (6 Ed.), section 188."

The contrast between the facts of the Haney Case and the facts of the instant case is, we think, obvious.

The Haney car was within thirty feet of the Ford car before there was anything in the situation and circumstances which would cause a person of ordinary prudence to anticipate that the Ford car would be driven across the pathway of the Haney car.

In the instant case, defendant Caldwell knew that parties in automobiles from Columbia frequently visited the Riverside Filling Station at night, and that, when they started on their return journey to Columbia, their entrance upon the highway would be attended with danger unless care was exercised both by them and by passing automobilists. A duty was therefore imposed both upon Caldwell and Lineberger to exercise such care as an ordinarily prudent person would exercise in such a situation.

There was substantial evidence from which the jury could find that the illumination around the Riverside Filling Station was such that defendant Caldwell could see automobiles standing in front of the filling station from the time he entered the Jackson

highway, about 525 feet south of the point of the collision, and, if looking, could have seen, as he approached, the Lineberger car move northward on the parking space and turn westward onto the highway. It is true that there was evidence of the presence of a standing automobile on the parking space which might have obscured Caldwell's view of the Lineberger car for a brief period as it made the turn toward the highway, but there is proof that, from the point where it "nosed" into the highway from the parking space, the Lineberger car moved westward across the highway for a distance of twenty-three feet at a speed of six to eight miles per hour in view of defendant Caldwell (if he was looking ahead) before the collision occurred.

Assuming that Caldwell's car was moving at a speed of forty miles an hour (although the jury might have inferred from the proof that he was moving at a greater speed), it is seen that his speed was at least five times as great as that of the Lineberger car; so that, while the Lineberger car was moving twenty-three feet across the highway (within the range of Caldwell's vision), the Caldwell car moved 115 feet. But defendant Caldwell admitted that he did not apply his brakes and attempt to check the speed of his car until he was within thirty feet of the Lineberger car.

Obviously, we think, there is no similarity between the essential facts of the Haney Case and those of the instant case, and our ruling in the Haney Case does not afford a precedent for the case now under consideration.

The petition for a rehearing is denied and dismissed at the cost of the petitioner.

Crownover and DeWitt, JJ., concur.